Filed 7/3/13  Conservatorship of Cowles CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| Conservatorship of the Person and Estate of HEATHER MICHELE COWLES. | B239586 |
| OVANDO J. COWLES,<br><br>     Petitioner and Respondent,<br><br>v.<br><br>IDELLE CLARK,<br><br>     Objector and Appellant. | (Los Angeles County<br>Super. Ct. No. BP088202) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Marvin M. Lager, Judge.  Affirmed.

Matthew M. Pope, for Objector and Appellant.

Palermo, Barbaro, Chinen & Pitzer, Gloria Scharre Pitzer and Philip J. Marr for Petitioner and Respondent.

_____

This appeal is the latest in a decades-long custody battle between Idelle Clark and Ovando Cowles over their daughter, Heather.  In this most recent iteration, Idelle[1] challenges the trial court's renewal of the restraining order against her, which prohibits her from communicating or visiting with Heather unless Heather initiates the contact. We affirm.

## FACTS

Idelle and Ovando were married in August 1985.  Heather was born on October 21, 1986, with various developmental disabilities.[2]  Idelle initiated divorce proceedings in March 1993, which began what the family court termed a "child custody bloodbath" during which Idelle accused Ovando of sexually molesting Heather.  A juvenile court proceeding was initiated as a result of the accusation and the matter went to trial.  At the close of the plaintiff's case, the charges of sexual abuse against Ovando were dismissed. The court noted, "the evidence . . . is not very convincing at all.  It does not rise to the dignity of going forward with this case."

When juvenile dependency jurisdiction terminated, a bifurcated trial on custody and visitation issues was conducted in family court, seven years after the divorce proceedings began.  The family court issued a bifurcated judgment on those issues on October 27, 2000.  The judgment awarded sole legal and physical custody of Heather to Ovando.  It further granted limited visitation with Idelle to once a week sessions of conjoint therapy with Heather.  Idelle was otherwise restrained from coming within 100 yards of Heather or contacting her.

---

[1]     As suggested in *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475-476, footnote 1, we refer to the parties by their first names.

[2]     Heather was born with a club foot which required a cast and corrective shoes.  She also had severe myopia and strabismus (crossed eyes) which required two eye surgeries. In a 2003 psychological evaluation when Heather was 16, Heather was testing at the fourth grade level for reading and the third grade level for arithmetic.  At that time, she was diagnosed with an unspecified learning disorder, expressive language disorder and borderline intellectual functioning.

Attendant to the judgment was an 82-page statement of decision detailing the evaluations and reports submitted by Heather's psychologists, counselors, teachers and visitation monitors. The reports uniformly discredited Idelle and her "obsessive focus" on the disproven allegations of sexual abuse. The statement of decision chronicled the occasions in which Idelle attempted to or did pressure Heather into accusing Ovando of molesting her. It also showed how Idelle tried to isolate Heather so that Heather would rely only on Idelle and never progress to independence. In a 1994 report, the court-appointed psychiatrist stated, "I am concerned because it is my impression that Idelle Cowles, in her need to be enmeshed[3] with her daughter, eliminates from her daughter's life those people who will not agree with her agenda, whether this be the pediatrician, the therapist, her daughter's father or the original D.C.S. worker. This is a terribly significant fact, if true, because Heather will grow up thinking that her mother is omnipotent and will therefore be unable ever to free herself from her mother's grasp and develop a mind of her own."

The court found that Idelle "is a mentally disordered person whose chosen path of conduct has severely harmed Heather emotionally and who, if permitted unrestricted contact with Heather, will continue severely to harm her emotionally. While a[n] intelligent and very articulate person, [Idelle] has substantially no insight into the fact that her conduct is harmful to Heather – and at this point, she may so enjoy basking in the self-created limelight surrounding this custody bloodbath that she simply doesn't care that her conduct is harmful to Heather . . . [¶] . . . [Idelle] will not cease her alienating and other inappropriate conduct unless she is successful in substantially excluding [Ovando] from Heather's life."

Idelle unsuccessfully appealed the family court's decision regarding custody and visitation to the United States Supreme Court. When Heather turned 18 in 2004, Ovando sought a conservatorship from the probate court and that petition was granted in 2005. He also requested and received an updated restraining order against Idelle, which was

---

**3** According to the trial court, the term "enmeshed" refers to a sort of role-reversal, where the child feels that she must care for or "parent" her mother.

issued on September 30, 2005, and renewed on September 1, 2009, by the probate court. Meanwhile, the family court continued to a bifurcated trial on division of marital property and a judgment was issued in July 2009. Idelle also appealed from that judgment and has sought extensions of time to file her opening brief in that case, No. B218043.

On October 26, 2011, Ovando filed another request on Heather's behalf as her conservator to renew the restraining order. In support of his request, Ovando cited to examples of Heather's vulnerability and Idelle's inappropriate communications that caused Heather "to have doubts about the past and not let[] Heather have her own memories and/or move on from the past and develop a positive future for herself."

Ovando submitted the family court's judgment and statement of decision which imposed the initial restraining order. He also provided a sworn declaration noting that Idelle "engaged in a variety of stalking behaviors [between October 2000 and October 2004] that included posting birthday signs in Heather's neighborhood and nearby her school, driving past her after-school camp facility, having third parties approach Heather in public places to discuss her mother, and so forth." He further observed, "while Heather has always been permitted to initiate monitored phone calls to her mother, she ceased doing so in approximately June 2006, because, as I observed, most of those calls were very upsetting to her. [Idelle] would oftentimes bring up the divorce and custody battle. Heather grew weary of it and stopped telephoning."

In more recent communications from Idelle to Heather, Idelle continued to dwell on the abuse allegations. For Heather's 24th birthday, Idelle sent her a gift and a letter, which contained references to the alleged abuse. Both Ovando and Idelle testified in the hearing on November 18, 2011. Idelle denied she ever stalked Heather and testified that she had a good relationship with her daughter. She also presented her email and text communications with Heather as evidence of their relationship.

The trial court issued the renewal order on January 3, 2012, to be effective until December 1, 2013. It prohibited Idelle and her agents, employees or representatives from contacting or visiting Heather unless Heather chose to initiate the contact. The order further prohibited Idelle from stalking Heather, her stepmother or Ovando. Idelle was

4

also ordered to refrain from asking Heather about her communications with her lawyer or therapist or from requesting an in person visit more than once every 30 days. Idelle timely appealed on March 2, 2012.

## DISCUSSION

Idelle disputes the necessity of renewing the restraining order against her. She contends the trial court abused its discretion because the facts do not support the decision and the renewal contravened public policy. We disagree.

Our review is governed by *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275 (*Ritchie*). There, a protective order issued under the Family Code was set to expire and a petition to renew the order was filed. (*Id.* at p. 1280.) The trial court issued the renewal on the assumption the petitioner was entitled to one "just upon request" even though the petition was contested. (*Ibid.*) On appeal, Division Seven of this court held that a request to renew a restraining order should not be granted simply upon request if it is contested.

The court held that it was not enough for the petitioner to have "a subjective fear the party to be restrained will commit abusive acts in the future. The 'apprehension' those acts will occur must be 'reasonable.' That is, the court must find the probability of future abuse is sufficient that a reasonable woman (or man, if the protected party is a male) in the same circumstances would have a 'reasonable apprehension' such abuse will occur unless the court issues a protective order." (*Ritchie, supra,* at p. 1288.) Under this objective test, "[a] trial court should renew the protective order, if, and only if, it finds by a preponderance of the evidence that the protected party entertains a 'reasonable apprehension' of future abuse. . . . [T]his does not mean the court must find it is more likely than not future abuse will occur if the protective order is not renewed. It only means the evidence demonstrates it is more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension is genuine and reasonable." (*Id.* at p. 1290.)

5

In evaluating whether the requesting party has a reasonable apprehension of future abuse, "the existence of the initial order certainly is relevant and the underlying findings and facts supporting that order often will be enough in themselves to provide the necessary proof to satisfy that test." (*Ritchie, supra*, 115 Cal.App.4th at p. 1291.) "Also potentially relevant are any significant changes in the circumstances surrounding the events justifying the initial protective order. For instance, have the restrained and protected parties moved on with their lives so far that the opportunity and likelihood of future abuse has diminished to the degree they no longer support a renewal of the order?" (*Ibid.*) The trial court should also consider the seriousness and degree of risk, such as whether it involves potential physical abuse, and the burdens the protective order imposes on the restrained person, such as interference with job opportunities. (*Ibid*.)

In challenging a renewal order, the restrained party is not permitted "to challenge the truth of the evidence and findings underlying the initial order." (*Ritchie, supra*, 115 Cal.App.4th at p. 1290.) We review the trial court's ruling under an abuse of discretion standard, to determine " 'whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420.)

With these guidelines in mind, we conclude that the trial court did not abuse its discretion in renewing the restraining order. As noted in *Ritchie,* the underlying findings and facts supporting the initial order here may be "enough in themselves to provide the necessary proof" to renew the protective order. (*Ritchie, supra*, 115 Cal.App.4th at p. 1291.) We need not, however, rely solely on the findings in the initial order because Idelle has repeated the same behavior which justified the order in the first place.

It is clear from the record that Idelle has not moved on with her life and remains obsessed with the sexual abuse allegations. She continues to believe they are true and will revise history to conform to her agenda. In three court filings in 2011 on the appeal of the division of assets judgment, Idelle submitted a sworn declaration which referred to case "CK14663 filed by LA County in support of the substantiated allegations of sexual

6

molest made by Heather Cowles against her father, Respondent Ovando J Cowles herein (bold and underlining omitted)." Her declaration also stated that "LA County had years earlier investigated (independent of the Family Law Court) and substantiated all of our daughter's allegations of abuse by Cowles which LA County (NOT Idelle Clarke) in turn alleged in CK14663." The refrain of abuse is repeated in Idelle's brief opposing the renewal request below and in her opening brief in this appeal. Indeed, she sets forth the purported evidence supporting the allegations of abuse in the first two pages of both her brief below and on appeal. Yet, she fails to mention that those allegations were dismissed.

In a 2009 letter to Heather on her 24th birthday, Idelle wrote, "Back during all the years when you screamed and banged your head on the walls and floor and begged me not to make you go visit your father . . . and when you collapsed while Carol was driving you to a visit with your father and the paramedics took you to the hospital where you cried and begged the doctors not to make you visit your Dad, NO ONE could have ever made me believe there would be a day -- much less years when you would choose not to see me or talk to me  [¶] . . .  [¶]  I try and tell myself that you remain under the total control of the man you explained to so many people hurt you so badly because, like me, you simply do not know how to get out from under his crushing control." Idelle added, "Trying to fend off your father's continuing legal attacks on me and his unending efforts to destroy me has badly hurt my health . . .  [¶]  It was so painful in the hospital when the nurses asked if my daughter was coming to see me because of course you never cho[o]se to see me anymore."

There is evidence that Heather is particularly vulnerable to manipulation. As an example, Ovando testified that Heather was convinced by a salesman over the telephone to sign up for a $69 magazine subscription that she did not want. After she discussed it with Ovando, she called to cancel the subscription but was only successful in getting a small discount from the original price. Ovando testified, "I believe in the case of her mom, where there's a biological connection, who is both persuasive and can be very angry and very controlling, that Heather would immediately want to try to please her, so

7

to speak, and [that] makes her extremely vulnerable to all of the past problems that we've had that I think were a part of the paperwork we submitted to the court." In light of this evidence, it was not an abuse of discretion for the trial court to conclude that the circumstances necessitating the initial restraining order were unchanged and there was a reasonable apprehension that Idelle's conduct would cause Heather emotional harm in the future if left unchecked.

Idelle ignores all of this evidence. She instead contends there were no facts to support the trial court's ruling, only Ovando's "belief and opinion" rather than any testimony from Heather herself. She also limits the definition of abuse and misinterprets the trial court's ruling.[4] We find none of Idelle's arguments compelling.

Ample evidence supports a finding of a reasonable apprehension of future emotional abuse. Idelle's reliance on the evidence she proferred in the form of texts and emails between her and Heather is an attempt to have us reweigh the evidence, which we may not do. (*Gonzalez v. Munoz, supra,* 156 Cal.App.4th at p. 420.) That Heather did not testify is not fatal to the renewal request. Heather was represented by independent counsel at all times during these proceedings. Indeed, Heather's attorney participated in the hearing and conducted a cross-examination of Idelle. There is no evidence that Heather's interests were not protected or that the trial court "unwittingly conspire[ed]" with Ovando to silence Heather.

We are also not convinced by Idelle's claim that there cannot be a reasonable apprehension of abuse because Idelle never abused Heather. Contrary to Idelle's definition, abuse under the Family Code is not limited to physical abuse or sexual abuse. It is statutorily defined as including "stalking, threatening, . . . harassing, telephoning, . . . contacting, either directly or indirectly by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party and, in the discretion of the court, on a showing of good cause, of other named family or household members." (Fam. Code, § 6320, subd. (a); & § 6203, subd. (d).) In *In re Marriage of*

---

**4** Idelle contends that the restraining order prevents Heather from contacting her. She is wrong.

*Nadkarni* (2009) 173 Cal.App.4th 1483, 1497, the court defined disturbing the peace under Family Code section 6320 to be "conduct that destroys the mental or emotional calm of the other party." As we have earlier discussed, there is ample evidence that Idelle's conduct has, in the past, and could, in the future, destroy Heather's mental or emotional calm.

## DISPOSITION

The judgment is affirmed. Respondent is awarded costs on appeal.


BIGELOW, P. J.

We concur:


RUBIN, J.


GRIMES, J.